(Decided 13th June, 1871.)

---

## The Philadelphia, Wilmington and Baltimore Railroad Co. *vs.* Solomon Weaver.

### *Agency may be inferred—Prayers and Instructions—Practice.*

Where the keeper of a boarding house of a railroad company had been in the habit of purchasing provisions from the plaintiff, for the use of the

boarding house, and the bills for such provisions had been, from time to time, paid by the company, the plaintiff might properly regard him as an agent *pro tanto* of the company, and would be justified, in the absence of any notice to the contrary, in dealing with him as such.

Where the instruction given to the jury covers the ground of controversy, the judgment will not be reversed, though some of the prayers rejected were free from objection.

APPEAL from the Circuit Court for Cecil County.

The case is sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, MAULSBY and ROBINSON, J.

*H. McCullough* and *Alexander Evans*, for the appellant.

*J. T. McCullough,* for the appellee.

BRENT, J., delivered the opinion of the Court.

This suit is brought by the appellee to recover the value of three firkins of butter, alleged to have been purchased by one Richardson for the use of a boarding house of the railroad company, at Perryville. The sale and delivery of the butter to Richardson is not denied, but the company insists that he had no authority to make the purchase as their agent, and that they cannot therefore be held liable in this action.

The evidence offered by the plaintiff tended to establish the agency of Richardson, and if uncontradicted no doubt of the liability of the company could be entertained. The company however offered testimony tending to show he had no authority to make the purchase in question, and thus a conflict in the evidence arose, and it became the duty of the jury to determine upon its weight.

The judgment being against the company, an appeal is taken upon the ground, that there is error in the rulings of the Court below, in granting the instructions asked for by

the plaintiff, and in the refusal to grant the third prayer offered by the defendant.

The plaintiff asked two instructions from the Court which were granted, and we cannot perceive any error in either of them.

The first instruction is based upon the evidence of the plaintiff, which if found to be true by the jury, certainly establishes the authority and agency of Richardson to make the purchase of the butter in question.  If he was, at the time, keeper of the company's boarding house, and had been in the habit of purchasing supplies for such boarding house, of the same character as claimed in this suit, and the bills for such supplies were from time to time paid by the company, the plaintiff properly regarded him as an agent *pro tanto*, and was justified, in the absence of any notice to the contrary, in dealing with him as such.

The correctness of the second instruction, we suppose, would have been conceded by the counsel for the defendant, had the case been argued orally, as the law announced in it cannot be questioned.  If the butter " was delivered to the defendant at their request or the request of their agent, and consumed or used by the defendant in their boarding house," there can be no doubt of the plaintiff's right to recover from the defendant what it was reasonably worth.

The theory of the defendant is, that Mills was the sole agent of the company in Perryville, and that he alone, and not Richardson, had the authority to purchase supplies for the company's boarding house.  This question is correctly submitted to the jury by the first instruction asked for by the defendant and granted by the Court.  By this instruction the jury were directed "if they believe from the evidence that Isaac N. Mills was the sole agent of the defendant, authorized to purchase butter and provisions for the boarding house of the defendant, and the plaintiff delivered the butter to Richardson without any orders from Mills or other agent of the defendant, and after said Mills had declined and refused to purchase said

butter, then the plaintiff cannot recover in this action, unless the jury shall further believe that the defendant or its agent, assented to the delivery and sale of said butter to Richardson."

This prayer distinctly submits to the jury the defendant's case upon the evidence offered in its behalf, and was all that could properly have been demanded from the Court.

The third prayer of the defendant, which was refused by the Court, is ambiguous, and upon that ground its rejection might be very properly placed. If by it the Court was asked to direct the jury if they found from the evidence Mills was solely authorized to approve and forward bills against the company, and had notified the plaintiff that he, Mills, did not want any more of his butter, it was sufficient to put the plaintiff upon inquiry as to the agency of Richardson, and if he failed to make such inquiry, he cannot recover, the prayer was manifestly erroneous. For had it been granted, no matter how conclusive the testimony of Richardson's agency might have been, the plaintiff. could not recover, because he had failed to inquire as to his agency. This is certainly not law. The plaintiff's right to recover cannot depend upon the inquiries he may or may not have made, but depends solely upon the fact of the agency of Richardson at the time he dealt with him.

If on the other hand the prayer was intended to submit to the jury the question of the sole agency of Mills to purchase supplies, its rejection by the Court below is no ground for a reversal of the judgment, because that question is raised and submitted in the first prayer of the defendant, which the Court had granted. It is well settled, if an instruction given to the jury covers the ground of controversy, the judgment will not be reversed, though some of the prayers rejected were in themselves correct. 3 *Md.*, 341 ; 11 *Md.*, 434 ; 27 *Md.*, 536.

As we find no error in the rulings of the Court below, its judgment will be affirmed.

*Judgment affirmed.*

(Decided 13th June, 1871.)